# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 17 - 412 |
| JOSE R. FLORES | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Jose Flores is a manipulative and dangerous child sexual predator. He has taken away the innocence of three children. The only way to keep children safe from Flores' predatory hands, is to imprison him for the rest of his life.

## I. PROCEDURAL BACKGROUND

Defendant Jose Flores is charged by Indictment with five counts: Counts One through Three, travel to have illicit sexual contact with a minor, in violation of Title 18, United States Code, Section 2423(b), Count Four, production of child pornography, in violation of Title 18, United States Code, Section 2251, and Count Five, possession of child pornography, in violation of Title 18, United States Code, Section 2252(a)(4). On December 6, 2018, Flores pled guilty to all charges against him. On February 15, 2019, Flores filed his first *pro se* motion to withdraw his guilty plea. A hearing was scheduled March 12, 2019, at which time Flores withdrew his motion to withdraw his guilty plea. On March 15, 2019, Flores sent a letter to the Court once again stating he wanted to withdraw his guilty plea. A hearing was held on June 11, 2019. Sentencing is scheduled for June 17, 2019.

## II. FACTUAL BACKGROUND:

In March of 2017, a 13-year-old girl, referred to herein and in the Presentence Investigative Report ("PSR") as Minor #1, reported to a school official that a family "friend" was sexually assaulting her. Law enforcement was notified. After being formally interviewed, Minor #1 relayed that Jose Flores had sexually assaulted her many times since she was approximately four years old. Minor #1 formerly lived in the same apartment complex with her family as Flores in Bronx, New York. When Minor #1 was approximately four years old she recalled being in her Bronx apartment alone with Flores in the living room. Flores began to rub her body "up and down" and then began to lick her vagina.

When Minor #1 was approximately five years old, she moved to Hazelton, Pennsylvania. Flores would visit her and her family at the Hazelton residence. On one recalled occasion, Flores took Minor #1 to the basement of the residence. He then began whispering things to her and began to lick her body "up and down." Flores attempted anal intercourse; Minor #1 reported "it did not fit" and that she was in pain and making loud noises. Minor #1 stated Flores stopped but then he laughed.

Prior to the Minor #1's 13th birthday, the victim moved with her family to Bethlehem, Pennsylvania. Flores continued to visit the family and the victim independently after the move. The victim detailed one incident in or about July of 2016. Flores was staying with her family for several days. While there, Flores took Minor #1 to Walmart and purchased food and snacks for her, as well as thong underwear. When they returned to the residence, Flores began "foreplay-type" acts, which progressed to Flores removing Minor #1's pants, repeatedly "licked" her vagina, and then had anal intercourse with her. When she told Flores to stop, he stated, "we always do

2

what you want to do but you never let me do what I want to do." Minor #1 believed Flores meant that he was always taking her to Walmart and buying food or undergarments for her but she did not want to fully engage in the sex acts with him.

Flores would again visit Minor #1 in or about August 2016, and again in or about October 2016, traveling from New York to Bethlehem, Pennsylvania. Both times Flores sexually assaulted her. During one of the assaults, Flores videotaped Minor #1 performing oral sex on him and took still photographs of Minor #1 focusing on her genital area.

Flores was arrested by Bethlehem Police Department for the sexual assaults perpetrated on Minor #1. After his arrest, law enforcement obtained several search warrants including one for an iPhone Flores had in his possession at the time of his arrest. On the phone were text messages between Flores and Minor #1. For example, on August 5, 2016, text messages were exchanged discussing something Flores did to Minor #1 before. Minor #1 text Flores she did not want to do it because she fell and her tailbone hurt. Flores stated it was not "fare." She further told him she was not ready and he replied she was ready but was just scared. Another text from Minor #1 stated, "I mean I'll suck your dick but I don't feel like doing anything tonight." There were other text messages between Minor #1 and Flores coordinating Flores' visit to Minor #1 in Bethlehem without her parents' knowledge.

Also seized from Flores was his Samsung Tablet. Discovered on the tablet were three still images of Minor #1's genital area and a video of Minor #1 performing oral sex on Flores. The video and images were taken on August 21, 2016. Text messages between the victim and Flores earlier that morning indicated that he was coming to see her, traveling about 1 ½ hours, and utilizing GPS to get there.

## III. SENTENCING CALCULATION.

### A. Statutory Maximum Sentence.

Counts One through Three, travel with intent to engage in illicit sexual conduct with a minor, for each count: 30 years imprisonment, a mandatory minimum five years supervised release up to lifetime supervised release, a $250,000 fine, a $100 special assessment, and, if found not to be indigent, an additional mandatory $5,000 special assessment pursuant to 18 U.S.C. § 3014;

Count Four, production of child pornography, as a result of Flores' prior conviction for aggravated sexual abuse of a minor, 50 years imprisonment a mandatory minimum 25 years imprisonment, a $250,000 fine, a mandatory minimum five years supervised release up to lifetime supervised release, a $100 special assessment, and, if found not to be indigent, an additional mandatory $5,000 special assessment pursuant to 18 U.S.C. § 3014; and

Count Five, possession of child pornography, as a result of Flores' prior conviction for aggravated sexual abuse of a minor, 20 years imprisonment, a mandatory minimum 10 years imprisonment, a mandatory minimum five years supervised release up to lifetime supervised release, a $100 special assessment, and, if found not to be indigent, an additional mandatory $5,000 special assessment pursuant to 18 U.S.C. § 3014.

Total Maximum Sentence: 160 years imprisonment, a mandatory minimum 25 years imprisonment, a $1,250,000 fine, a $500 special assessment, and, if found not to be indigent, an additional mandatory $25,000 in special assessments. Full restitution to the victims of the offenses shall be ordered, and forfeiture of any property used to facilitate the crimes shall also be ordered.

4

**B.     Sentencing Guidelines Calculation**.

The Probation Office correctly calculated the defendant's advisory guideline range at the time it was issued.   Since that time, Flores has attempted to withdraw his plea on two separate occasions and denied he was responsible for his crimes.   As a result, the government now objects to the adjustments for acceptance of responsibility as discussed in more detail below.

**Group 1:    Production and Possession of Child Pornography (Counts Four and Five)**

| | |
|---|---|
| Base Offense Level – USSG § 2G2.1(a): | 32 |
| Minor less than 16 years old – USSG § 2G2.1(b)(1)(B): | +2 |
| Commission of a Sex Act – USSG § 2G2.1(b)(2)(A): | +2 |
| Sadistic/Masochistic conduct – USSG § 2G2.1(b)(4)(A): | +4 |
| Use of a computer USSG § 2G2.1(b)(6): | +2 |
| Group 1 Adjusted Offense Level: | 42 |

**Group 2:    Travel with Intent to Engage in Illicit Sexual Conduct (Count One)**

| | |
|---|---|
| Base Offense Level – USSG § 2A3.1(a)(2) & § 2G1.3(c)(3): | 30 |
| Minor less than 16 years old – USSG § 2A3.1(b)(2)(B): | +2 |
| Use of a computer – USSG § 2A3.1(b)(6): | +2 |
| Group 2 Adjusted Offense Level: | 34 |

**Group 3:    Travel with Intent to Engage in Illicit Sexual Conduct (Count Two)**

| | |
|---|---|
| Base Offense Level – USSG § 2A3.1(a)(2) & § 2G1.3(c)(3): | 30 |
| Minor less than 16 years old – USSG § 2A3.1(b)(2)(B): | +2 |
| Use of a computer – USSG § 2A3.1(b)(6): | +2 |
| Group 3 Adjusted Offense Level: | 34 |

**Group 4:   Travel with Intent to Engage in Illicit Sexual Conduct (Count Three)**

| | |
|---|---|
| Base Offense Level – USSG § 2A3.1(a)(2) & § 2G1.3(c)(3): | 30 |
| Minor less than 16 years old – USSG § 2A3.1(b)(2)(B): | +2 |
| Use of a computer – § 2A3.1(b)(6): | +2 |
| Group 4 Adjusted Offense Level: | 34 |

| | |
|---|---|
| **Greater of the Adjusted Offense Levels:** | **42** |
| **Multiple Count Adjustment – USSG § 3D1.4(a) – 2.5 units:** | **+3** |
| **Combined Adjusted Offense Level USSG § 3D1.4:** | **45** |

The offense level of 45 is higher than the offense level that would be applicable under USSG § 4B1.5(a)(1)(A) pertaining to repeat and dangerous sex offender against minors – and therefore, its application does not change the Adjusted Offense Level.   See PSR ¶ 69.   However, as a repeat and dangerous sex offender, the applicable criminal history category is V.   An adjusted offense level of 45 and a criminal history category of V exceeds the guideline chart by three levels, and therefore Flores faces a guideline range of life imprisonment.

As stated, probation calculated Flores guideline range by applying USSB § 3E1.1(a) and § 3E1.1(b) for clearly demonstrating acceptance of responsibility and for timely notification of his intent to plead guilty to avoid the needless expenditure of government resources.   Since Flores entered his pleas of guilt, he has attempted to withdraw his plea on two separate occasions, necessitating two separate hearings.   During these hearings, Flores claimed he was misled about the possible penalties he would face if he pled, claimed that he never had child pornography on his

electronic devices, and claimed he traveled from New York to Pennsylvania only to go shopping with the Minor #1's mother, among other statements denying his culpability.

His actions since he entered his guilty plea have been the polar opposite of demonstrating acceptance. USSG § 3E1.1 states:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.
>
> USSG § 3E1.1 - Application Note 1 states:
>
> In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following: (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility ….

The burden is on a defendant to establish, by a preponderance of the evidence, that the acceptance of responsibility adjustment has been earned. *United States v. Muhammad*, 146 F.3d 161, 167 (3d Cir. 1998). Although Flores pled guilty, "a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, App. N. 3. Indeed, "conduct of the defendant that is inconsistent" with a guilty plea may demonstrate that a defendant does not accept responsibility for his offense. *Id*. The district court's denial of the

7

reduction is entitled to "great deference" because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, Application Note 5.

Here, Flores claims that law enforcement engaged in improper practices, that law enforcement stole from him, and that law enforcement obtained his electronic devices illegally. Flores denies that there was any child pornography on his electronic devices, and denies he traveled from New York to Pennsylvania to sexually abuse a minor. Further, he now claims that if he had child pornography on his electronic devices, that his New York probation officer would have found it first. This in stark contradiction to his admissions during his guilty plea hearing and the overwhelming evidence stacked against him. Flores' denials demonstrate he has fallen extremely short of earning acceptance of responsibility. Furthermore, instead of remaining silent, has objected through his attorney, to any relevant conduct. Therefore, Flores has failed to establish he has accepted responsibility for his crimes and is not entitled to any adjustments pursuant to USSG § 3E1.1.

## IV. SENTENCING ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is life.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.  **Nature and Circumstance of the Offense**:

Jose Flores is a child sexual predator. Flores has been sexually abusing children for most of his adult life. He stands before the Court to be sentenced for repeatedly traveling from his home in Bronx, New York to sexually abuse his friend's daughter, Minor #1. The abuse started when Minor #1 was just four years old in Bronx, New York. When Minor #1's family moved to Hazelton, Pennsylvania and then Allentown, Pennsylvania – Flores continued to prey on her by visiting often and sexually abusing her. The majority of Minor #1's childhood was robbed from her at the hands of a predator.

One of the ways in which Flores groomed Minor #1 was to offer her food that she was forbidden. Flores was aware that Minor #1 was not permitted to have any "junk food." This included eating food from Burger King and sugary treats. Flores would take Minor #1 from her

9

residence to places like Walmart and Burger King.  In addition to buying her forbidden snacks, he would purchase for her shoes, lingerie, and other items.  This was Flores' ploy for compliance.

Flores was good friends with Minor #1's mother.  Minor #1's mother trusted Flores.  So much so, that she made Flores a part of her wedding in Pennsylvania.  He repaid her friendship by taking her daughter's innocence.  As is further discussed below, he also repeatedly sexually abused her son, Minor #2, for years.

Flores continues to victimize Minor #1 and her family by his post-conviction claims of innocence – his lies.

### B. History and Characteristics of Defendant:

In addition to Minor #1, Flores also sexually abused another child, referred to here and in the PSR as Minor #2, from approximately 2005 (when the child was 6 years of age), to approximately 2011 (when the child was 12 years of age).  The sexual abuse included forced anal sex on the Minor #2, forcing the Minor #2 to perform oral sex on him, and related offenses.  Flores and Minor #2 also lived in the same apartment building in the Bronx, New York.

Unfortunately, Flores' sexual predatory nature did not stop there.  Flores has a prior conviction for sexual abuse in the first degrees for having sexual contact with a minor less than 11 years of age, referred to here as Minor #3.  Minor #3 reported that Flores engaged in oral and anal sex with him over several years, starting when Minor #3 was approximately 8 years old.  Specifically, Flores licked Minor #3's anus numerous times and took photographs of the abuse.  Flores and Minor #3 lived in the same apartment building in the Bronx, New York, like Minor #1.  Flores was convicted upon a plea of guilty on July 25, 2014.  He sadly received only 10 years'

probation. He was on probation when he committed the instant offenses. Certified criminal conviction records are attached as Exhibit A. *See also* PSR § 77.

Flores is a child sexual predator. There is no separating Flores from the dangerous animal that he is. His abuse of Minor #2 began when Flores was in his twenties, progressed to abusing Minor #1 and Minor #3 and continued until he was arrested for the instant offense. There was no stopping him. He gained access to children in a Bronx, New York apartment complex by gaining the trust of the victims' parents. He then violated that trust in the most horrific of ways – by raping their children. Consistent with all three children was anal sex; Flores' sexual abuse of choice.

Flores took away the innocence of children, robbed them of their first sexual experience, and forever changed the course of their lives. He is simply a monster who needs to be kept away from children for the remainder of his life.

   **C.**  **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**:

To say Flores' offenses are serious is an egregious understatement. He destroyed the childhood of three children. He ripped a hole in the heart of families. Only a sentence of life can match the magnitude of his crimes. Flores has demonstrated that he was unable to stop himself without law enforcement intervention. A sentence of life will reflect the seriousness of Flores' crime, promote respect for the law, and provides just punishment for the offense.

**D.      The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant;**

Flores has demonstrated through his actions that there is no stopping him.   Deterrence to him appears to be a lost cause.   However, deterrence to others is paramount.   Sentencing Flores to imprisonment for the rest of his life is the only way to send a clear message to others that when they commit horrific sexual crimes against children, they will be housed in prison away from children for the rest of their lives.   .

**E.      The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner**

There is no need to adjust a sentence based on any education or vocational treatment or for medical care.

**F.      The guidelines and policy statements issued by the Sentencing Commission**

As stated above, the Supreme Court has declared:   "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."   *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

## VI. CONCLUSION

Flores has engaged in horrific criminal behavior targeting his friend's children, and now lies about his criminal behavior to obtain some consideration from this Court. His lies have been exposed. A sentence of life is warranted to punish the defendant, deter others, demonstrate respect for the law and judicial system, and protect the public for his sexual deviance for the rest of his life.

        Respectfully submitted,

        WILLIAM M. MCSWAIN
        United States Attorney


        /s/ Sherri A. Stephan
        Sherri A. Stephan
        Assistant United States Attorney

Dated:    June 17, 2019

## CERTIFICATE OF SERVICE

I certify that a copy of this sentencing memorandum was caused to be served by Sherri A. Stephan, Assistant United States Attorney, by electronic filing to defense counsel:

Robert Sletvold, Esquire
333 Union Street
Allentown, PA 18102

/s/ Sherri A. Stephan
Sherri A. Stephan
Assistant United States Attorney

Date: June 17, 2019