UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| JOSE R. FLORES, : | |
|        Petitioner, : | |
| : | No. 17-cr-00412 |
| v. : | No. 23-cv-04652 |
| : | |
| UNITED STATES OF AMERICA, : | |
|        Respondent. : | |

_____

**O P I N I O N**
Motion to Vacate Sentence, 28 U.S.C. § 2255, ECF No. 78 – Dismissed
Motion for Appointment of Counsel, ECF No. 79 - Denied

**Joseph F. Leeson, Jr.**                                                                                   **May 8, 2024**
**United States District Judge**

I.      **INTRODUCTION**

Petitioner Jose R. Flores pleaded guilty to three counts of traveling in interstate commerce with intent to engage in illicit sexual conduct, one count of producing child pornography, and one count of possessing child pornography in December 2018, and he was sentenced on those offenses in June 2019. He did not file an appeal from his judgment of conviction to the Third Circuit Court of Appeals. He has now filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence by generally claiming his plea counsel was ineffective for failing to file a motion to suppress evidence law enforcement seized from his vehicle after his arrest and coercing him to plead guilty by telling him that he would receive no more than 30 years' incarceration. He also claims that the Court should apply equitable tolling to save what he acknowledges is a facially untimely § 2255 motion.

Along with the § 2255 Motion, Flores has also filed a Motion for Appointment of Counsel. For the reasons set forth below, the Court declines to apply equitable tolling and will dismiss the § 2255 Motion as untimely. The Court will also deny the Motion for Appointment of Counsel.

## II. BACKGROUND

On August 3, 2017, an Indictment was filed against Flores, charging him with five counts: (1) three counts of traveling in interstate commerce with intent to engage in illicit sexual conduct with a person who had not attained the age of 18, in violation of 18 U.S.C. § 2423(b); (2) one count of production of child pornography, in violation of 18 U.S.C. § 2251(a); and (3) one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4). *See* ECF No. 1. The charges arose out of Flores traveling from Bronx, New York, to Bethlehem, Pennsylvania to engage in oral and anal intercourse with a 13-year-old girl in July and August 2016; videorecording the victim performing oral sex on him and photographing the victim's genital area in August 2016; and the recovery of the videorecording and photographs after executing a search warrant on Flores' Samsung tablet after his arrest. *See* Transcript, Change of Plea Hearing ("Plea N.T.") at 39–42, ECF No. 50; *see also* Gov't's Trial Mem. at 1-3, ECF No. 33.

On December 5, 2018, Flores agreed to plead guilty to all counts in the Indictment.[1] *See* Guilty Plea Agreement, ECF No. 42; *see also* Plea N.T. at 2, 6-25. The following day, the Honorable Edward G. Smith, now deceased, held a change of plea hearing during which Flores

---

[1] Prior to pleading guilty, Flores filed a Motion to Suppress, which sought to have the Court suppress any evidence obtained from his Samsung tablet. *See* ECF No. 37. The evidence obtained from this tablet formed the basis for the production and possession of child pornography charges.

2

entered a plea of guilty. *See* Plea N.T. at 45. At the hearing, Judge Smith conducted a comprehensive colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure which developed the following relevant testimony.

During Judge Smith's colloquy of Flores, Flores testified to the following:

- He was not under the influence of drugs or alcohol. *See id.* at 5.

- He could understand Judge Smith. *See id.*

- His defense counsel, Gavin Holihan, Esq., went over the charges with him and fully explained his trial rights and the defenses he could bring to those charges. *See id.*

- He voluntarily signed the Plea Agreement and the Acknowledgement of Rights. *See id.* at 6, 23-24.

- Attorney Holihan fully explained the Plea Agreement and Acknowledgment of Rights to him. *See id.*[2]

- He had enough time to discuss the Plea Agreement and Acknowledgement of Rights with Attorney Holihan. *See id.* at 6, 25.

- Attorney Holihan answered any questions he may have had about the Plea Agreement. *See id.* at 7, 24.

- No other promises or agreements were made with him outside of the Plea Agreement. *See id.* at 23.

- He fully understood the entire Plea Agreement. *See id.* at 24, 25, 44.

---

[2]   Initially, Flores responded to Judge Smith's questioning by indicating that he did not have sufficient time to "talk this over" with Attorney Holihan. *See id.* at 6. Judge Smith then followed up on this question and Flores responded that he had enough time to discuss it with Attorney Holihan, and he did not need any more time. *See id.*

3

- He wanted to enter into the Plea Agreement and be bound by every provision therein. *See id.* at 24, 25.

- He was fully satisfied with Attorney Holihan. *See id.* at 22, 32-33.

- He believed Attorney Holihan's advice had been in his best interest. *See id.* at 22, 25.

- Attorney Holihan did everything for him that he wanted him to do. *See id.* at 25.

- No one (a) promised or offered him anything else to get him to plead guilty, (b) used force, violence, or threats to get him to plead guilty, or (c) told him what to say during the hearing. *See id.* at 25-26.

- He was pleading guilty of his own free will. *See id.* at 6-7, 23-26.

- He was pleading guilty because he truly was guilty. *See id.* at 32.

Judge Smith also went through every paragraph of the Plea Agreement with Flores, to ensure that Flores understood and agreed to each paragraph. *See id.* at 7-23.

Once Judge Smith completed colloquing Flores on the Guilty Plea Agreement, he colloquied Flores on the constitutional rights Flores was waiving by pleading guilty and the elements of the offenses to which Flores was pleading guilty. Judge Smith then asked the Government to summarize the facts it could prove at trial. The Government set forth the following facts:

> In March of 2017, a 13-year-old girl reported to a school official that a family friend was sexually assaulting her. Law enforcement was notified. After being formally interviewed, the victim relayed that Jose Flores had sexually assaulted her many times since she was approximately 4 years old.
>
> The victim formerly lived in the same apartment complex with her family as Flores did in the Bronx, New York. When the victim was approximately four years old, she recalled being in her Bronx apartment alone with Flores in the living

4

room. Flores began to rub her body up and down and then began to lick her vagina. She said her pants were removed and the assault occurred for approximately five minutes.

When she was approximately five years old, she moved to Hazelton, Pennsylvania. Flores would visit her and her family at the Hazelton residence. On one recalled occasion, Flores took the victim to the basement of the residence. He then began whispering things to her, and began to lick her body up and down. Flores attempted anal intercourse, and the victim reported it did not fit, and that she was in pain and making loud noises. The victim says Flores stopped, but then laughed.

Prior to the victim's 13th birthday, the victim moved with her family to Bethlehem, Pennsylvania. Flores continued to visit the family and the victim independently after the move. The victim detailed one incident, in or around June or July of 2016. Flores was staying with her family for several days. While there, Flores took the victim to Walmart and purchased food and snacks for her as well as thong underwear. When they returned to the residence, Flores began foreplay-type acts, which progressed Flores removing the victim's pants and licking her vagina, and then having anal intercourse. This offense is charged in Count 1.

Flores again visited the victim in or about August 2016, which represents Count 2, and again in or about October 2016, which represents Count 3, traveling from New York to Bethlehem, Pennsylvania. Both times, Flores sexually assaulted her.

In August of 2016, Flores abused the victim by having her perform oral sex on him. He also abused her by penetrating her anus with his penis. Flores videotaped the victim performing oral sex on him, and took photographs of the victim, focusing on her genital area from behind with her bent over. This offense is charged in Count 4.

In October . . . 2016. Flores took the victim to Walmart and Burger King, and then returned her to her residence and started watching a movie. During the movie, Flores started to rub her, and then undressed her. He then performed oral sex on her and started anal sex. It was when he was abusing the victim through anal sex that the victim's stepfather came home and was unable to get into the house, as the doors were locked.

The victim's stepfather banged on the door to get in. Flores told the victim to run upstairs, and he pretended that he was in the shower, and came to unlock the door in a towel. Neither the victim's mother nor stepfather knew Flores was visiting from Bronx, New York that day.

[In] April of 2017, Flores was arrested by the Bethlehem Police Department for sexual assaults perpetrated on the victim. After his arrest, law enforcement

>obtained several search warrants, including one for an iPhone Flores had in his possession at the time of his arrest.
>
>On the phone were text messages between Flores and the victim. For example, on August 5th, 2016, text messages were exchanged discussing something Flores did to the victim before. The victim texted Flores she did not want to do it because she fell and hurt her tail bone. Flores stated it was not fair. She further told him she was not ready and he replied she was ready, but was just scared.
>
>Another text from the victim stated, I may now suck your dick, but I don't feel like doing anything tonight. There were other text messages between the victim and Flores, coordinating Flores' visit to the victim in Bethlehem without her parents' knowledge.
>
>Also seized from Flores was a Samsung tablet. Discovered on the tablet were three still images of the victim's genital area and a video of the victim performing oral sex, Counts 4 and 5. The video and images were taken on August 21st, 2016.
>
>Among the text messages seized from Flores' iPhone were messages sent in the morning of that day, August 21st, 2016, indicating that Flores was coming to see the victim, traveling about one and a half hours and using -- utilizing GPS to get there. The Samsung tablet and the iPhone were manufactured outside the Commonwealth of Pennsylvania.

*Id.* at 39-42. Flores admitted that these facts were true, correct, and accurate. *See id.* at 42-43. He also admitted that these facts described conduct that met the elements of the offenses to which he was pleading guilty. *See id.* at 43.

At the conclusion of the colloquy, Judge Smith found that Flores was "fully alert, competent and capable of entering an informed plea," that his guilty plea was both "knowing and voluntary" and "supported by an independent basis in fact, containing each of the essential elements of the offenses pled to." *Id.* at 45. Judge Smith also accepted Flores' plea of guilty. *See id.* at 46.

On February 15, 2019, Flores filed a *pro se* Motion to Withdraw Guilty Plea, which included a request for the appointment of new counsel. *See* ECF No. 44. On February 28, 2019,

6

Flores filed a counseled Motion to Withdraw Guilty Plea. *See* ECF No. 45. The Government filed a Response in Opposition to the Motion to Withdraw on March 11, 2019. *See* ECF No. 47.

Judge Smith held a hearing on the Motion to Withdraw on March 12, 2019. During the hearing, Flores repeated his request for new counsel. Judge Smith granted the request for new counsel and appointed Robert Sletvold, Esq. as Flores's defense counsel. *See* ECF No. 49. Judge Smith also scheduled a hearing on Flores's Motion to Withdraw Guilty Plea for April 10, 2019. *See* ECF No. 51.

On April 10, 2019, Judge Smith held a hearing on Flores's Motion to Withdraw Guilty Plea, during which Flores, after being colloquied by Judge Smith and Attorney Sletvold, indicated that he wanted to withdraw the Motion to Withdraw Guilty Plea and proceed to sentencing. *See* Apr. 10, 2019 Order at 1, ECF No. 53. The same day, Judge Smith entered an Order denying as moot Flores' *pro se* and counseled Motions to Withdraw Guilty Plea. *See id.*

Flores filed another *pro se* Motion to Withdraw Guilty Plea, which was docketed on May 15, 2019. *See* ECF No. 54. Judge Smith held a hearing on this Motion on June 11, 2019. During the hearing, Flores indicated that, *inter alia*, he wanted Attorney Sletvold to continue to represent him and asked for more time to consider his Motion.

On June 18, 2019, Judge Smith held a sentencing hearing. At the outset, Flores informed Judge Smith that he wanted to withdraw his Motion to Withdraw Guilty Plea and proceed to sentencing. Judge Smith later sentenced Flores to an aggregate sentence of 70 years' incarceration and a term of lifetime supervised release. *See* ECF No. 64. He also directed that Flores register as a sex offender. *See id.* Flores did not appeal from Judge Smith's Judgment of Conviction.

Starting in late March 2020, Flores submitted a series of letters in which he asked Judge Smith for an extension of time to file an "appeal" from his sentence. Unfortunately, due to measures taken by the Clerk's Office in response to the Covid-19 pandemic, those letters were not docketed until July 2, 2020. *See* ECF Nos. 65-70. Judge Smith treated the letters as Motions for an Extension of Time to File a Notice of Appeal and entered an Order denying the Motions on July 7, 2020. *See* ECF No. 71.[3] Judge Smith also directed the Clerk of Court to mail Flores a form Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. *See id.*[4]

The Clerk of Court docketed another letter from Flores in which he sought an extension of time to file an appeal on August 27, 2020. *See* ECF No. 72. Judge Smith entered an Order on August 31, 2020, denying Flores' letter request for an extension of time for the same reason he denied the other letter requests. *See* ECF No. 73.

More than two years later, Flores submitted a letter in which he requested that the "District Attorney [sic] Office" provide him with a copy of all discovery in his case in accordance with the Freedom of Information Act. *See* ECF No. 76.[5] On April 11, 2023, Judge Smith entered an order in which he, *inter alia*, treated the letter as a Motion for Discovery,

---

[3]   In Judge Smith's Order, he explained that a district court was limited to extending the time for a defendant to file a notice of appeal to 30 days after the original time to file an appeal expired. *See* July 7, 2020 Order at 1 n.1. Since Judge Smith sentenced Flores on June 18, 2019, this meant that he could have only extended the time for Flores to file a notice of appeal to August 1, 2019, which was well before Flores submitted his first letter which Judge Smith construed as a Motion for an Extension of Time to File a Notice of Appeal. *See id.*

[4]   The Clerk's Office mailed Flores a copy of Judge Smith's Order and a form § 2255 motion on July 8, 2020. *See* Unnumbered ECF Entry Between ECF Nos. 71 & 72.

[5]   Flores mailed this letter, which was postmarked on January 23, 2023, to Judge Smith's chambers in Easton, Pennsylvania. *See* ECF No. 76 at ECF p. 1. Judge Smith's chambers appears to have forwarded the letter to the Clerk's Office, where it was docketed on March 31, 2023. *See id.*

8

denied the Motion, and directed the Clerk of Court to send a copy of the letter to the Government. *See* ECF No. 77.[6]

On November 6, 2023, Flores filed the instant § 2255 Motion and Motion for Appointment of Counsel. *See* ECF No. 78.[7] This matter was then reassigned from Judge Smith's calendar to the Undersigned's calendar on December 1, 2023. *See* ECF No. 81. The Government filed a response in opposition to the § 2255 Motion on January 5, 2024. *See* ECF No. 84. The matter is fully briefed and ready for disposition. For the reasons that follow, the § 2255 Motion is dismissed and the Motion to Appoint Counsel is denied.

### III. LEGAL STANDARDS

#### A. Motion to Vacate under 28 U.S.C. § 2255 – Review of Applicable Law

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *Okereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002). Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of

---

[6] In this Order, Judge Smith also addressed Flores's mistaken belief that the "District Attorney [sic] Office" operated out of the same address as his chambers. *See* Apr. 11, 2023 Order at 1. Judge Smith also explained that the United States Attorney's Office was prosecuting the case and provided Flores with information about how he could attempt to obtain documents relating to his case. *See id.* at 1-2.

[7] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275-76 (1988). Here, although Flores did not include a declaration regarding when he placed his § 2255 Motion in the prison mail system, the envelope containing the Motion was postmarked on November 6, 2023. *See* ECF No. 78 at ECF p. 23. As such, the Court uses November 6, 2023, as the § 2255 Motion's filing date.

the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)).

"A district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005) (citations omitted)). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255(b). This involves a two-step inquiry. First, "the district court must consider[] as true all appellant's nonfrivolous factual claims. Second, it must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel." *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (internal quotations and citations omitted). To evaluate claims under this second step, the court considers both elements of the test from *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.* "[I]f a nonfrivolous claim does not conclusively fail either prong of the *Strickland* test, then a hearing must be held." *Id.*

      **B.**      **Timeliness of § 2255 Motions – Review of Applicable Law**

A petitioner has one year from the date their conviction becomes final to file a timely § 2255 motion. *See* 28 U.S.C. § 2255(f). Specifically, the one-year limitation period begins to run on any one of the following dates:

(1) the date on which the judgment of conviction becomes final;

  (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented by making a motion by such governmental action;

  (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

  If a § 2255 motion is facially untimely, a district court may in extraordinary circumstances grant equitable tolling to allow it to be reviewed. *See Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998) (construing § 2244(d)(1) as a statute of limitation, not a jurisdictional bar, and holding that courts therefore have discretion to "equitably toll in extraordinary circumstances"). However, "[e]quitable tolling is available 'only when the principle of equity would make the rigid application of a limitation period unfair.'" *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (quoting *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003)). To prove that equity demands tolling the statute of limitations, the petitioner bears the burden to show "(1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstances stood in [their] way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation and citation omitted); *see also Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) ("[T]he petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient." (cleaned up)). For example, the Third Circuit has "explained that equitable tolling may be appropriate if (1) the [respondent] has actively misled the p[etitioner], (2) if the p[etitioner] has in some extraordinary way been prevented from asserting [their] rights, or (3) if

the p[etitioner] has timely asserted [their] rights mistakenly in the wrong forum." *Jones*, 195 F.3d at 159 (internal marks and citation omitted).

        **C.**      **Ineffective Assistance of Counsel – Review of Applicable Law**

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *Id.* at 689 (explaining that courts should not "second-guess counsel's assistance"); *see also Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) ("[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel."). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (internal quotations omitted). The court must consider the totality of the evidence, and the burden is on the petitioner. *Strickland*, 466 U.S. at 687, 695.

"A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden." *Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994). To satisfy the "prejudice" element in guilty plea cases, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Court may consider information provided in the plea agreement and statements during the oral colloquy as evidence that a guilty plea was both knowing and voluntary. *See Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) ("It is also well settled that plea agreements are consistent with the requirements of voluntariness and

intelligence -- because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange."). Further, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (holding that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"); *Zilich*, 36 F.3d at 320 ("It can hardly be gainsaid that declarations made under oath ought not to be lightly cast aside.").

## IV. ANALYSIS

Because Flores did not file a direct appeal from his Judgment of Conviction, his judgment became final when the appeal period ended on July 2, 2019, fourteen days after judgment was entered. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation [under § 2255(f)(1)] begins to run, on the date on which the time for filing such an appeal expired."); Fed. R. App. P. 4(b)(1)(A)(i) (stating that criminal defendant's notice of appeal must be filed in district court within fourteen days of entry of judgment). Therefore, Flores's § 2255 Motion should have been filed by July 2, 2020, to comply with the one-year limitation period of § 2255(f)(1). However, Flores's § 2255 Motion was not filed until November 6, 2023, more than three years after the limitations period ended. Therefore, on its face, the instant § Motion is untimely.

Flores offers various reasons, which he calls his "wall of obstacles," for why he did not file a timely § 2255 motion. *See* Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Mot.") at ECF pp. 15-19, ECF No. 78. Specifically, Flores suggests that he

13

could not timely file his § 2255 Motion because (1) he spent most of the period following his sentence in the "SHU" (i.e. the prison's special housing unit); (2) Covid-19 "broke out" in "approximately February 2020," which caused "institutional complications"; (3) Attorney Sletvold did not respond to his written "inquiries" about petitioning for habeas relief, after initially agreeing to begin working on a motion; (4) Attorney Sletvold failed to respond to his request for transcripts and discovery on July 28, 2020, so he could begin "crafting his pro se 2255 petition"; (5) his requests to the Clerk of Court for transcripts went unanswered; and (6) "there were documented instances of prison staff throwing away outgoing inmate mail at USP Thomson," where he was incarcerated as of July 28, 2020. *See id.* For the following reasons, the Court declines to apply equitable tolling in this case.[8]

---

[8] Although Flores does not discuss this in his § 2255 Motion, the Government responded to the Motion by arguing that he did not qualify for a later start date under § 2255(f)(2) for the filing of the Motion. *See* Gov't's Resp. in Opp'n to Pet'r's Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by a Person in Federal Custody at 5, ECF No. 84. Section 2255(f)(2) provides that the one-year limitations period can begin to run on "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." 28 U.S.C. § 2255(f)(2). Any movant
  seeking "to invoke [s]ection 2255(f)(2) ... [must] allege (1) the existence of an impediment to [their] making a motion, (2) governmental action in violation of the Constitution or laws of the United States that created the impediment, and (3) that the impediment prevented the prisoner from filing [the] motion." *Simmons v. United States*, 974 F.3d 791, 796–97 (6th Cir. 2020) (citation omitted); *see also Gantt v. United States*, Civ. No. 11-6191, 2014 WL 6471478, at *3 (D.N.J. Nov. 18, 2014) ("While the Third Circuit has not addressed the issue, the text of § 2255(f)(2) suggests that the impediment must be government-created, violative of the Constitution, and actually prevent the filing of a motion to vacate." (citations omitted)). Thus, the movant "must show a causal connection between the unlawful impediment asserted and [their] failure to timely file [their] § 2255 [motion]." *United States v. Latin*, Crim. No. 17-514, Civ. No. 21-453, 2022 WL 676670, at *4 (D. Haw. Mar. 7, 2022) (citation omitted); *Simmons*, 974 F.3d at 797 (explaining that section 2255 movant "had to allege why his supposed impediment prevented him from filing earlier. In other words, to satisfy [s]ection 2255(f)(2), he had to allege a causal connection between the purportedly inadequate resources at the state facilities and his inability to file his motion on time"); *see also Bryant v. Ariz. Atty.*

As an initial matter, while Flores alleges that he was incapable of filing a § 2255 motion due to his transfers between prisons and placement in the SHU, there is a gap in his time frame where he appears to have been incarcerated but not in the SHU. Flores alleges that "[o]n or about June 26, 2019, [he] left Lehigh County [Jail] and was taken to the Federal Detention Center (FDC) in Philadelphia, Pennsylvania. On or about August 12, 2019, [he] was transferred from FDC Philadelphia to the FBOP United States Penitentiary Canaan." Mot. at ECF p. 16. Whereas Flores alleges he was placed in SHU immediately after his transfers to other prisons, *see id.* at ECF pp. 16–17, he makes no such allegation regarding his transfer from the Lehigh County Jail to FDC Philadelphia. He further does not explain why he could not have filed a § 2255 Motion during this period. For these reasons alone, the Court is disinclined to apply equitable tolling.

There is, however, an even bigger issue with Flores' claims for equitable tolling, namely his failure to allege what he has been doing to pursue his rights over the past three years. Even if

---

*Gen.*, 499 F.3d 1056, 1060 (9th Cir. 2007) (explaining that "[t]o obtain relief under [28 U.S.C.] § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and [their] failure to file a timely habeas petition").
*United States v. Galindo*, Crim. No. 20-189, Civ. No. 23-966, 2023 WL 6406261, at *8 (E.D. Pa. Oct. 2, 2023).

Here, even if Flores argued he was eligible for the § 2255(f)(2) start date, it would not save his § 2255 Motion. First, Flores has not identified any "governmental action in ***violation of the Constitution or laws of the United States*** that created the impediment" to him filing the § 2255 Motion. *Simmons*, 974 F.3d at 796 (emphasis added). While he alleges that he was transferred to several correctional institutions (seemingly state and federal) and placed in the SHU at some point in all or most of them, he does not suggest that this was unconstitutional or improper. Second, starting the limitations period at the last date referenced in the § 2255 Motion would not help Flores here. Flores discusses his transferring between prisons (and placement in the SHUs) from the time of his sentencing until July 28, 2020. *See* Mot. at ECF pp. 16-18. Although Flores mentions that "there were documented instances of prison staff throwing away outgoing inmate mail at USP Thomson," he does not allege it happened to his mail, and even if he did, he does not indicate when this conduct occurred. Therefore, the last possible governmental action ended when he was transferred to USP Thomson. If the Court were to start Flores' one-year period for filing a § 2255 motion from July 28, 2020, it would not save his § 2255 Motion here because the one-year period running after this date would have ended on July 28, 2021, more than two years before he filed the Motion.

15

the Court were to presume that Flores could not file a § 2255 motion during the relevant period, June 18, 2019 to June 18, 2020, he did not file the instant Motion until more than three years *after* the expiration of the limitation period. Thus, Flores has a period of more than three years where he has not explained how he was pursuing his rights.[9] Accordingly, Flores has simply not demonstrated that he was diligently pursuing his rights during this time frame.[10]

Even if somehow Flores had demonstrated that he was diligently pursuing his rights during the relevant period, Flores has failed to establish that any of his proffered reasons are "extraordinary circumstances" that would warrant the tolling of any portion of the one-year limitation period. Routine and ordinary events of prison life, such as prison lockdowns, being placed in solitary confinement, and being transferred between penitentiaries, "are not the type of extraordinary events that make it impossible to file a timely habeas petition." *Harper v. United States*, No. 4:07-cr-00339, 2012 WL 32920, at *5, at *15 (M.D. Pa. Jan. 6, 2012) (holding that petitioner was "not entitled to equitable tolling because he was transferred from one penitentiary to another, placed in solitary confinement at various times, and not always able to communicate with other prisoners who possessed legal knowledge" because "[p]risoners must take such routine restrictions of prison life into consideration when calculating when to file a federal petition"); *see also Garrick v. Vaughn*, No. 00-4845, 2003 WL 22331774, at *4 (E.D. Pa. Sept. 5, 2003) ("Routine aspects of prison life such as lockdowns, lack of access to legal resources, and disturbances must be taken into consideration by a prisoner in deciding when to file a federal

---

[9] This three-year period also occurred after the Clerk's Office mailed Flores a form § 2255 motion per Judge Smith's July 7, 2020 Order.

[10] The fact that Flores submitted a letter seeking discovery from the "District Attorney [sic] Office," which he apparently mistakenly sent to the address for Judge Smith's chambers in late January 2023, does not alter this conclusion. This filing occurred more than two years after the expiration of the limitations period.

16

petition, because these 'do not constitute extraordinary circumstances sufficient to equitably toll the statute of limitations.'" (quoting *Atkins v. Harris*, No. 98-3188, 1999 WL 13719, at *2 (N.D. Cal. Jan. 7, 1999))). Here, all the prison-related events described by Flores, such as measures taken in response to Covid-19 (for example, prison lockdowns), and time spent in the SHU, are ordinary to prison life. Flores does not offer any special set of facts around these otherwise ordinary prison occurrences to justify equitable tolling in this case.[11]

Flores's allegations relating to Attorney Sletvold also do not amount to "extraordinary circumstances" warranting equitable tolling. In the first instance, to the extent that Flores is alleging that Attorney Sletvold represented that he would assist him with filing a § 2255 motion at some point after the Covid-19 pandemic began in "approximately February 2020," and then did not respond to Flores's "inquiries" thereafter, Flores's letters to Judge Smith in the spring-summer 2020 explicitly contradict that allegation. More specifically, in his letters dated March 23, 2020, April 26, 2020, May 11, 2020, May 13, 2020, June 15, 2020, and June 18, 2020, Flores expressly stated that he and/or his family had reached out to Attorney Sletvold to get his help, but Attorney Sletvold had refused to help. *See* ECF Nos. 65-70.[12]

---

[11] The Covid-19 pandemic presented unique circumstances for everyone, including officials and incarcerated individuals at correctional institutions. Nonetheless, Flores does not describe how Covid-19 prevented him from filing a timely § 2255 motion or explain why he failed to do so whenever those Covid-19 "institutional complications" concluded. For instance, while his correctional institution may have had "institutional complications" due to Covid-19, these complications apparently did not prevent Flores from sending six letters to Judge Smith between March 23, 2020, and June 18, 2020. *See* ECF Nos. 65-70.

[12] Judge Smith appointed Attorney Sletvold to represent Flores under the Criminal Justice Act ("CJA"). Under the Third Circuit's CJA Plan, Attorney Sletvold's representation ended once Flores did not file a direct appeal. *See* Criminal Justice Act Plan, https://www.ca3.uscourts.gov/criminal-justice-act-and-appointed-counsel-information (last visited May 2, 2024) ("Counsel appointed under the Act by the trial court shall be deemed to have been designated under the Act to continue on appeal unless otherwise relieved by order of the Court of Appeals."). The filing of a § 2255 motion does not qualify as an appeal. Attorney Sletvold had no obligation to assist Flores with the filing of a § 2255 motion.

Nevertheless, if the Court accepted Flores's allegation that Attorney Sletvold initially informed him that he would work on a § 2255 motion and then did not respond to Flores's "inquiries" thereafter, it would not warrant equitable tolling because, as already stated, Flores does not explain what he did for more than three years after Attorney Sletvold allegedly did not respond to him. He also does not assert when his alleged "inquires" to Attorney Sletvold occurred, so the Court is left with a more-than-three-year gap between when Flores appears to have contacted Attorney Sletvold and did not receive a response and when he filed the instant Motion. Attorney Sletvold's alleged conduct is not the type of "extraordinary circumstance" which prevented Flores from timely filing a § 2255 motion and, even if it was, Flores has not demonstrated that he exercised reasonable diligence in pursuing his rights, which alone justifies this Court not applying equitable tolling.

Flores's final arguments for equitable tolling relate to his inability to obtain transcripts from the Clerk of Court or discovery from Attorney Sletvold. These arguments also do not warrant equitable tolling. His inability to obtain case-related documents such as transcripts from Attorney Sletvold does not justify equitable tolling because "in general, fault on the part of the attorney is not extraordinary." *United States v. Shabazz*, Crim. A. No. 02-00731, Civ. A. No. 05-04717, 2006 WL 2854301, at *3 (E.D. Pa. Oct. 4, 2006). Instead, "[t]he Third Circuit has stated explicitly that, 'In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling.'" *Id.* (quoting *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001)). Thus, "[t]o justify equitable tolling, the attorney misconduct must '[go] beyond garden variety neglect.'" *Id.* (second alteration in original) (quoting *Seizinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 241 (3d Cir. 1999)).

18

Case 5:17-cr-00412-JFL   Document 85   Filed 05/08/24   Page 19 of 20

Here, Flores does not indicate when he requested transcripts or other documents related to his case from Attorney Sletvold. Even if he had, he does not explain why he could not timely file a basic habeas petition, especially considering he appears to have been aware of a deadline (albeit one that he thought related to his time to file an "appeal") ending on June 18, 2020. *See* ECF Nos. 65-70 (indicating awareness of filing deadline); *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir.) (holding that there were not extraordinary circumstances sufficient to justify equitable tolling where petitioner, if he had acted with reasonable diligence, had sufficient time to "prepare and file at least a basic pro se habeas petition"), *cert. denied*, 539 U.S. 948 (2003). At best, Flores's complaints about Attorney conduct relating to a failure to produce requested case-related documents sound only in an allegation of negligence and is insufficient to rise to the level of extraordinary circumstances warranting equitable tolling.

As for his inability to obtain transcripts from the Clerk of Court, the Court notes that the Clerk of Court did not docket any requests from Flores for transcripts specifically directed to the Clerk of Court. The only request for documents of any kind was Flores's request to the "District Attorney [sic] Office," which was docketed on March 31, 2023. *See* ECF No. 76. Moreover, Flores does not explain why he needed any transcripts to file a timely § 2255 motion, especially considering the nature of his current claims do not relate to any portion of those transcripts. Since "it is not required that a petitioner have a complete trial record when filing a . . . federal *habeas* claim," Flores's inability to obtain transcripts from the Clerk of Court (or documents from Attorney Sletvold) do not constitute extraordinary circumstances justifying equitable tolling in this case. *White v. Shannon*, Civ. A. No. 01-4298, 2003 WL 21771723, at *5 (E.D. Pa. July 24, 2003).

## V.     CONCLUSION

Since the Court declines to apply equitable tolling to render Flores's Motion timely filed, the Motion must be dismissed as untimely.[13] The Court must also deny Flores's Motion for Appointment of Counsel. There is no basis for the issuance of a certificate of appealability.[14]

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[13]    If the Court determined that equitable tolling was warranted in this situation, it appears that Flores would have difficulty showing he was entitled to relief on the merits of his Motion. Although Flores claims that Attorney Holihan did not file a motion to suppress evidence obtained from inside of his vehicle, Attorney Holihan did file a Motion to Suppress the seizure and search of the Samsung tablet found in the vehicle. *See* ECF No. 37. In addition, while Flores contends that he pleaded guilty only because Attorney Holihan promised that he would receive a 30-year sentence, Flores acknowledged to Judge Smith during the guilty plea colloquy that he understood that **no one** could guarantee the sentence he would impose. *See* N.T. at 14, 26.

[14]    "Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* For the reasons set forth herein, Flores has not shown that jurists of reason would find it debatable whether his § 2255 Motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether this Court was correct in its procedural ruling.